## Case No. 4,450.

The EMILIE.

The ABRAHAM LEGGETT.

[2 Ben. 416.][1]

District Court, S. D. New York. May, 1868.

Beebe, Dean & Donohue, for the pilot boat. W. Q. Morton and J. K. Hill, for the bark.

BLATCHFORD, District Judge. These are cross libels for a collision which took place about three o'clock p. m., on the 4th of September, 1866, near the quarantine ground, off Staten Island, in the harbor of New York, between the schooner pilot boat Abraham Leggett, and the bark Emilie, a Bremen vessel. The bark was coming in from sea in tow of a tug, towed behind the tug, by a hawser, and in charge of a pilot, who was on board of the bark, and who had the direction of the movements of both the bark and the tug. The tide was flood, and the

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

wind about northwest, blowing pretty fresh. The course of the channel, at the place of collision, was north and south. The bark had no sails set. The stem and bowsprit of the pilot boat came in contact with the port side of the bark, the bowsprit entering the bark, and both vessels were considerably damaged. The case set up on the part of the pilot boat is, that she was lying at anchor in a proper place, with her sails up to dry, and in plain sight of the tug and the bark as they approached, and that the bark attempted to pass too close to the pilot boat, and in consequence ran into her.

The case set up on the part of the bark is, that, as she and her tug neared the quarantine station, the tug was stopped and the bark brought nearly to a stand-still, for the purpose of waiting for the health officer to come on board; that, while she was thus so waiting, the pilot boat was lying with her sails up, apparently at anchor, and to the westward of the bark, and between her and the shore of Staten Island; that the pilot boat heaved at her chain, got under way, held her jib to port, and proceeded under full sail for the bark, heading for her foremast; that the helm of the bark was at once put hard to port, but that movement, owing to her want of steerage way, had no apparent effect on her; that the bark hailed to the pilot boat to let her jib run and put her helm hard-a-starboard, which would have avoided the collision, but the hail was not complied with, and the helm of the pilot boat was kept to port, and she came head on into the bark.

I am satisfied, on the evidence, that this collision happened solely through the fault of the bark. It is shown by the evidence of the man at her wheel, that her helm was put to port before the collision, and that her head fell off thereby a point and a half, that is, from north to north by east half east. Although her headway may have been stopped, so far as any traction of her by the tug was concerned, she was in the tide, and drifting with the tide in a direction toward the pilot boat, and the effect of putting the helm of the bark to port was to throw her head to the starboard and her hull more athwart the tide. The pilot boat was at anchor, with her sails up to dry, as could plainly be seen from the bark, and it is not claimed that the pilot boat changed her position, or got under way, until the bark had come up quite near to her. I am not at all satisfied that the pilot boat hoisted her anchor at all. She was waiting for the pilots who belonged on board of her to come down from the city, and, until they arrived, there was no occasion for her to get under way, and it is improbable that she would do so. They had not arrived at the time of the collision. Whatever the pilot boat did in the way of hoisting her jib and getting on any headway, was a consequence of the peril in which the bark put her by coming too close to her,

and occurred when a collision was imminent. With the wind as it was, and the bark coming as she was with the flood tide, the manoeuvre of the pilot boat to avoid the danger, namely, porting her helm, with a view to letting her head fall off from the wind, so that she could go under the stern of the bark, was a proper one, and would, under ordinary circumstances, have been effective. It was thwarted by the fact that her anchor held her head up to the wind. The fact of her putting up her jib, or getting on whatever headway she got, or porting her helm, cannot be imputed to her as a fault tending to cause a collision. She was put into the peril by the fault of the bark in coming so close as, by stopping the tug, to drift with the tide, so as to make a collision probable.

In the suit against the bark, there must be a reference to a commissioner to ascertain the damages caused to the pilot boat by the collision, and a decree against the bark for the amount, with costs. The libel against the pilot boat is dismissed, with costs.